UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**GEORGE ANTHONY COLLIER**            **CIVIL ACTION NO: 3:14-CV-2686**
    **LA. DOC # 350370**
                                      **SECTION P**
**VERSUS**
                                      **JUDGE ROBERT G. JAMES**

**WARDEN JERRY GOODWIN**              **MAGISTRATE JUDGE HAYES**

### REPORT AND RECOMMENDATION

Pro se Petitioner George A. Collier, a prisoner in the custody of Louisiana's Department of Corrections, filed the instant Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on September 8, 2014. [doc. # 1]. Petitioner attacks his manslaughter conviction, his home invasion conviction, and the two concurrent sentences of twenty and fourteen years imposed by the Fourth Judicial District Court, Ouachita Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

### Background

A Ouachita Parish Grand Jury indicted Petitioner on charges of second degree murder, attempted armed robbery, and home invasion. [doc. # 25-1, p. 4]. On April 16, 2012, the trial court held a hearing on Petitioner's preliminary decision to plead guilty. [doc. # 12, p. 5]. At the hearing, the trial judge thoroughly explained to Petitioner that he had a right to a trial by judge or jury, that he was presumed innocent, that the court could sentence him to twenty years of imprisonment, that he did not have to testify if he proceeded to trial, that he had a right to confront his accusers, that he had a right to compulsory process, and that, if he pled guilty, he

would have limited rights of appeal. [doc. # 12, p. 8-20]. Petitioner indicated that he understood, and he stated that no person forced, coerced, or threatened him to plead guilty. *Id.* Petitioner then pled guilty to one count of manslaughter and one count of home invasion. *Id.* The trial judge remarked, "I believe that [Petitioner's plea is] knowingly, intentionally, freely, and voluntarily given . . . ." *Id.* at 21.[1]

On June 29, 2012, the trial judge sentenced Petitioner to serve twenty years imprisonment at hard labor for manslaughter and fourteen years imprisonment at hard labor for home invasion. [doc. # 10-2, p. 68]. The judge ordered Petitioner to serve the two sentences concurrently, and he qualified that the first five years of the sentence for home invasion would "be without benefit of probation, parole, or suspension of sentence." *Id.* at 84.

Petitioner did not appeal,[2] but he did, on June 5, 2013, file a pro se application for post-conviction relief before the Fourth Judicial District Court. *Id.* at 11. There, he raised the following claims: (1) the indictment was defective; (2) ineffective assistance of counsel; and (3) the trial judge failed to develop a factual basis for the plea. *Id.* The district court denied relief on July 31, 2013. *Id.* at 9. The Second Circuit Court of Appeal denied Petitioner's subsequent application for supervisory review on October 10, 2013. *Id.* at 5. The Louisiana Supreme Court, on July 31, 2014, likewise denied Petitioner's application. *Id.* at 3.

---

[1] Petitioner also signed a form entitled, "Waiver of Constitutional Rights and Plea of Guilty," acknowledging, *inter alia*, that he intended to plead guilty to manslaughter and home invasion, that he understood the rights he was surrendering, and that no individual forced, coerced, or threatened him to enter the plea. [doc. # 12, p. 3].

[2] By pleading guilty, Petitioner waived his right to appeal all non-jurisdictional defects in the proceedings. *See State v. Crosby*, 338 So. 2d 584 (La. 1976). Further, as the court imposed an agreed-upon sentence, Petitioner was statutorily prohibited from seeking review of his sentence. LA. CODE. CRIM. PROC. art. 881.2 (A)(2).

Petitioner filed the instant Petition on September 8, 2014. [doc. # 1]. He raises the same assignments of error that he raised before the district court on collateral review. *Id.* The matter is now before the Court.

## Law and Analysis

I.   **Standard of Review – 28 U.S.C. § 2254**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief. The AEDPA limits how a federal court may consider *habeas* claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as

3

opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**II.     Petitioner's Claims**

A. Claim One: Defective Indictment

Petitioner claims that the indictment was fatally defective because it did not include the phrase, "contrary to the State of Louisiana and against the peace and dignity of the same." [doc. # 10-1, p. 4]. The State argues that Petitioner waived this issue because he entered an unqualified guilty plea. [doc. # 25, p. 3].

If a petitioner enters a voluntary, knowing, and intelligent guilty plea, he waives any challenge to nonjurisdictional defects in the proceedings, with the exception of claims for ineffective assistance of counsel relating to the voluntariness of the guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983); *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981). In *Brown v. Jernigan*, 622 F.2d 914, 916 (5th Cir. 1980), for instance, a petitioner claimed that his "indictment was dated and signed improperly and that it was returned by less than a full panel of grand jury members." The Fifth Circuit ruled that the petitioner waived any alleged defects in the indictment when he pled

4

guilty. *Id.* Here, as in *Jernigan*, Petitioner waived this nonjurisdictional challenge to the indictment when he voluntarily[3] pled guilty.

That said, even absent waiver, Petitioner's claim is without merit. "[T]he sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984). Here, the omission of the language Petitioner cites did not render the indictment defective, much less so defective that it deprived the trial court of jurisdiction.

To explain, Article VII, § 1 of the Louisiana Constitution of 1921 stated in part, "[A]ll prosecutions shall be carried on in the name and by the authority of the State of Louisiana, and shall conclude: 'against the peace and dignity of the same.'" However, this particular requirement was not included in the Louisiana Constitution of 1974. *See State v. Estes*, 956 So. 2d 779, 792 (La. Ct. App. 2 Cir. 2007). In addition, while LA. CODE CRIM. PROC. art. 462 does provides that a grand jury indictment "may" include the phrase, "contrary to the law of the State of Louisiana and against the peace and dignity of the same," the statute is permissive in nature and thus does not mandate that an indictment include this language. *See id.*; *State v. Davis*, 614 So. 2d 270, 274 (La. Ct. App. 3 Cir. 1993), *rev'd on other grounds*, 634 So. 2d 1168 ("The

---

[3] Petitioner tacitly claims that his guilty plea was unknowing and involuntary, but he does not point to anything in the record to substantiate his assertion. To the contrary, in fact, his testimony at the plea haring clearly demonstrates that his plea was knowing, voluntary, and intelligent. [doc. # 12, p. 5-25]. *See Estelle*, 711 F.2d at 680-81 (holding that a plea was voluntary where the trial judge informed the petitioner—and the petitioner indicated that he understood—that he was entitled to a jury trial, that he had a right to produce and examine witnesses, that he had a right against self-incrimination, that he need not plead guilty, and that the court was not bound by any sentence recommendation).

omission of the 'sacramental language,' if a defect at all, was one of form only . . . ."). This claim should be **DENIED**.

B. Claim Two: Ineffective Assistance of Counsel

Petitioner claims that counsel was ineffective for failing to challenge the allegedly defective indictment, for declining a more favorable plea offer, for failing to locate an alibi witness, and for failing to object when the judge ordered him to serve the first five years of the home invasion sentence without benefit of probation, parole, or suspension of sentence.[4]

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). Further, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

When applying the first prong of *Strickland*, federal courts do not second-guess the attorney's decision from the distorting perspective of hindsight; rather, they presume that the

---

[4] As a prefatory matter, the Court points out that Petitioner, at his guilty plea hearing, responded, "No, sir," when the judge asked him if he had any complaints concerning counsel's representation. [doc. # 12, p. 7]. Likewise, Petitioner responded, "Yes, sir," when asked whether counsel had "[b]een a good lawyer for you." *Id.* Moreover, when Petitioner signed the form entitled, "Waiver of Constitutional Rights and Plea of Guilty," Petitioner initialed next to the statement, "I am satisfied with the way that my attorney and the Court have handled my case." *Id.* at 3.

attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy.  *See Strickland*, 466 U.S. at 689-90.  The burden is on the petitioner to show that counsel's representation fell "outside the wide range of professionally competent assistance." *Id.* at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).  In other words, the petitioner must demonstrate that counsel's representation was objectively unreasonable.  *Strickland*, 466 U.S. at 688.  To establish prejudice in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

When the AEDPA governs, review of the state court's resolution of the ineffective assistance of counsel claim is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009), since the question is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).  Importantly, "[t]his is different from asking whether defense counsel's performance fell below *Strickland's* standard," because the "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*  Consequently, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786.  To obtain relief, a petitioner must show that the state court's ruling on the claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.  "The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788.

### i. Failure to Challenge the Indictment

Petitioner claims that counsel failed to challenge the allegedly defective indictment. [doc. # 10-1, p. 8]. To reiterate, Petitioner claims that the indictment was defective because it did not include the phrase, "contrary to the [law of the] State of Louisiana and against the peace and dignity of the same." *Id.* at 4. As discussed above, however, Petitioner's indictment was not defective. Consequently, counsel did not render ineffective assistance when he chose not to challenge it.

Even assuming the indictment was defective, Petitioner fails to demonstrate, or even argue, that he would have proceeded to trial had counsel objected and managed to cure the alleged deficiency. Moreover, nothing in the record indicates that the omission of the phrase above in any way affected Petitioner's decision to plead guilty. In other words, Petitioner fails to demonstrate the requisite prejudice.

### ii. Declining a More Favorable Plea Offer

On November 3, 2011, the prosecution presented Petitioner with an initial plea agreement whereby Petitioner would plead guilty to home invasion and the prosecution would drop the remaining charges. [doc. # 25-6, p. 82]. On February 6, 2012, the trial court held a hearing on the matter and the following discussion took place:

> State: [W]e had a plea offer out to Mr. Collier and I had to provide some additional discovery, some recent things that have occurred.
>
> Court: Yes, sir.
>
> State: Which I've given a disk this morning to [Mr. Collier's counsel], but I understand that Mr. Collier is not interested in a plea offer.
>
> Counsel: That's correct, Your Honor.

>Court: Okay.
>
>State: And therefore it's withdrawn.
>
> * * *
>
>State: And I do owe [Petitioner's counsel] a little more discovery, Judge. We were discussing this morning what he got on the earlier disk and I found some files apparently on my disk that are not on his disk.
>
>Court: Okay.
>
> * * *
>
>Court: [A]nd the plea offer at this point is denied. You don't wish to avail yourself. Correct?
>
>Petitioner: That's correct.

[doc. # 25-9, p. 2-4].

In the instant claim, Petitioner contends that counsel erred when he advised Petitioner not to accept the aforementioned plea offer because it was more favorable than the offer Petitioner eventually accepted. *Id.* at 11. Petitioner baldly argues that counsel persuaded him to reject the offer and that he "rejected [the offer] without proper advice." [doc. # 10-1, p. 13].

Even assuming counsel did advise Petitioner to reject the plea,[5] Petitioner makes no attempt to explain why counsel's advice was deficient or improper.[6] To the contrary, the record, as well as Petitioner's argument, tends to show that counsel's advice was strategic. On October

---

[5] Petitioner provides no evidence to support his assertion that counsel advised him to decline the offer.

[6] Petitioner briefly claims that counsel failed to communicate the initial plea offer to him. [doc. # 10-1, p. 12]. This assertion is belied by the hearing transcript. As recounted above, the judge asked Petitioner if he wished to reject the offer and Petitioner responded, "That's correct." [doc. # 25-9, p. 4].

28, 2010, prior to Petitioner's decision to reject the first plea, the prosecutor informed counsel, "[T]he only statements that I am aware [of] that have been given by any of the three suspects in this matter are those by Mr. Coleman." [doc. # 25-5, p. 71]. According to Petitioner, after he rejected the initial offer on February 6, 2012, counsel informed him that he should accept the new offer in light of "newly developed evidence . . . ." *Id.* at 11. While Petitioner does not detail this "newly developed evidence," the clear inference is that counsel received inculpatory evidence from the State after he allegedly advised Petitioner to reject the original offer.[7] That is to say, when counsel advised Petitioner to reject the first offer, counsel was unaware of the full weight of inculpatory evidence that the State possessed. The Court cannot say that counsel's alleged actions were "outside the wide range of reasonable competence." *See Strickland*, 466 U.S. at 689-90. This conclusory claim does not warrant relief.

    iii. <u>Failure to Locate an Alibi Witness</u>

Petitioner claims that counsel failed to locate and interview a potential alibi witness. [doc. # 10-1, p. 17]. To reiterate, following a voluntary and knowing guilty plea, a petitioner cannot "attack the ineffectiveness of his counsel in any respects other than as the alleged ineffectiveness bears upon counsel's faulty advice that coerced a guilty plea." *Estelle*, 711 F.2d at 682. In *Estelle*, the Fifth Circuit held that, because the petitioner voluntarily pled guilty, he waived his claim concerning counsel's alleged failure to investigate witnesses. *Id.* Here, as in

---

    [7] The State contends that, following Petitioner's decision to reject the first offer, "a second and third co-defendant (including Reginald Bell) agreed to testify against" Petitioner. [doc. # 25, p. 5]. The record supports this contention. First, at sentencing, Petitioner indicated that the other defendants implicated him in exchange for lesser sentences. [doc. # 25-9, p. 47]. Second, when Petitioner rejected the initial offer, the prosecutor informed the trial judge that he "owe[d] [Petitioner's counsel] a little more discovery," and that he needed to "provide some additional discovery" in light of new developments. [doc. # 25-9, p. 3].

*Estelle*, Petitioner waived this particular ineffective assistance claim when he voluntarily and knowingly pled guilty. *See, e.g., Seat v. Director, TDCJ-CID*, 2012 WL 3580842, at *6 (E.D. Tex. Aug. 17, 2012) (holding that the petitioner waived his claim that counsel failed to investigate an alibi witness when he pled guilty).

Even assuming Petitioner did not waive this claim, the Court finds that counsel's alleged actions did not prejudice Petitioner. Petitioner argues that, had counsel investigated further, he would not have pled guilty. [doc. # 10-1, p. 17]. The Court, however, cannot determine whether Petitioner would have decided not to plead guilty had counsel located and interviewed the alibi witness because Petitioner does not present any evidence,[8] sworn or otherwise, demonstrating that the purported witness would have testified or setting forth the content of the witness's proposed testimony.[9] Without this showing, the Court has no way of predicting whether counsel, in light of the witness's proposed testimony, would have advised Petitioner to take the plea or to proceed to trial.[10]

---

[8] A petitioner claiming that counsel failed to perform an adequate investigation must provide factual support demonstrating what further investigation would have revealed. *See Moawad v. Johnson*, 143 F.3d 942, 948 (5th Cir. 1998).

[9] *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (denying a claim that counsel failed to call an alibi witness because nothing in the record demonstrated what the witness would have testified to); *see also Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (stating that, to demonstrate prejudice in a claim that counsel failed to call a witness, a petitioner must show that the witness would have testified at trial).

[10] *See Hill*, 474 U.S. at 59 ("[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.").

*Estelle*, Petitioner waived this particular ineffective assistance claim when he voluntarily and knowingly pled guilty. *See, e.g., Seat v. Director, TDCJ-CID*, 2012 WL 3580842, at *6 (E.D. Tex. Aug. 17, 2012) (holding that the petitioner waived his claim that counsel failed to investigate an alibi witness when he pled guilty).

Even assuming Petitioner did not waive this claim, the Court finds that counsel's alleged actions did not prejudice Petitioner. Petitioner argues that, had counsel investigated further, he would not have pled guilty. [doc. # 10-1, p. 17]. The Court, however, cannot determine whether Petitioner would have decided not to plead guilty had counsel located and interviewed the alibi witness because Petitioner does not present any evidence,[8] sworn or otherwise, demonstrating that the purported witness would have testified or setting forth the content of the witness's proposed testimony.[9] Without this showing, the Court has no way of predicting whether counsel, in light of the witness's proposed testimony, would have advised Petitioner to take the plea or to proceed to trial.[10]

---

[8] A petitioner claiming that counsel failed to perform an adequate investigation must provide factual support demonstrating what further investigation would have revealed. *See Moawad v. Johnson*, 143 F.3d 942, 948 (5th Cir. 1998).

[9] *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (denying a claim that counsel failed to call an alibi witness because nothing in the record demonstrated what the witness would have testified to); *see also Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (stating that, to demonstrate prejudice in a claim that counsel failed to call a witness, a petitioner must show that the witness would have testified at trial).

[10] *See Hill*, 474 U.S. at 59 ("[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.").

In addition, considering that Petitioner admits he was with the alibi witness "on a specific date and time," it is clear that Petitioner knew there was a potential witness when he pled guilty. *See id.* Petitioner, in other words, did not need counsel to tell him that there was a witness who could place him at a specific location at a specific time. Counsel's alleged failure to uncover this witness could not have affected the voluntariness of Petitioner's plea.[11]

### iv. Failure to Object at the Guilty Plea Hearing

Petitioner claims that counsel failed to object when the trial judge ordered Petitioner to serve the first five years of his home invasion sentence without benefit of probation, parole, or suspension of sentence. [doc. # 10-1, p. 21]. Petitioner argues that, at the time of sentencing, the home invasion statute did not place any restrictions on the first five years of the sentence. *Id.* at 23.

Petitioner is incorrect. The home invasion occurred on January 15, 2010. [doc. # 12, p. 10]. At the time, LA. REV. STAT. § 14:62.8 (effective Aug. 15, 2008 to Aug. 14, 2010), entitled "Home invasion," mandated that "at least five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence." In fact, a later version of the statute, effective prior to Petitioner's plea and subsequent to Petitioner's sentencing, included the same mandatory provision. *Id.* (effective Aug. 15, 2010 to July 31, 2012). Petitioner's claim is patently without merit.[12]

---

[11] In fact, Petitioner does not maintain that he would have proceeded to trial absent counsel's alleged error; instead, Petitioner claims that he "probably" would have proceeded to trial. [doc. # 10-1, p. 20].

[12] The Court also highlights that the trial judge informed Petitioner prior to his plea that the first five years of the home invasion sentence would be served without benefit of probation, parole, or suspension of sentence. [doc. # 12, p. 12].

Petitioner fails to overcome the deference owed to the state *habeas* court. He has not shown that the court's denial of his ineffective assistance of counsel claims constituted an error beyond any possibility for fairminded disagreement. These claims should be **DENIED**.

C. Claim Three: Trial Court Failed to Develop a Factual Basis

Petitioner claims that the trial judge failed to develop a factual basis for his plea. [doc. # 10-1, p. 28]. When a defendant proclaims innocence "but pleas guilty anyway, due process is satisfied only if the state can demonstrate a 'factual basis for the plea.'" *Orman v. Cain*, 228 F.3d 616, 621 (5th Cir. 2000) (citing *North Carolina v. Alford*, 400 U.S. 25, n.10 (1970)). "[A]bsent statements inconsistent with guilt, state courts are not constitutionally required to establish a factual basis for the plea of guilt." *Banks v. McGougan*, 717 F.2d 186, 188 (5th Cir. 1983). In that vein, even an assertion that a petitioner is entering a plea specifically under *Alford* does not constitute a claim of innocence or a "statement inconsistent with guilt" sufficient to trigger the need for a court to ascertain the factual basis for the plea. *Orman*, 228 F.3d at 622. A sentencing court is not required to ascertain whether a defendant believes in his innocence; rather, a defendant must assert his innocence and put the court on notice that there may be some need to inquire into the plea's factual basis. *Id.* at 621.

Here, at the plea hearing, the trial judge asked Petitioner, "Are you pleading guilty to manslaughter as well as home invasion because you are in fact guilty of manslaughter and home invasion?" [doc. # 12, p. 9]. Petitioner responded, "Yes, sir." *Id.* The judge then asked the prosecutor to "go over the facts" and the prosecutor stated the following:

> In this case the facts are that on the 15th day of January, 2010 Mr. Collier, Mr. Ware, Mr. Coleman and another individual had planned to go in and make a home invasion of the residence of Mr. David Jackson on South 9th Street. And when they – they did

> in fact force their way in, were armed, in the process of rummaging through the house Mr. – the victim in the matter, David Jackson, was struck a number of times and injured. Then as the search for items in the residence of Mr. Jackson – David Jackson continued Mr. Jackson had come out of the back bedroom where he had – they thought he was knocked out and Mr. Collier discharged a gun, and in the discharge of the gun it accidentally struck one of his co-perpetrators in the home invasion, a Mr. Erwin Ausberry, everybody called him "Round" but Mr. Erwin Ausberry he died as a result of that gunshot.

*Id.* at 10-11.[13] Following that, the trial judge asked Petitioner if the prosecutor's rendition of the facts was "pretty much how it was," and Petitioner responded, "I guess so." *Id.* at 11.

Turning to the instant claim, the Court first observes that Petitioner never proclaimed his innocence prior to pleading guilty.[14] Thus, the trial court was not on notice of a need to inquire into the plea's factual basis. Second, even assuming, *arguendo*, that Petitioner did proclaim his innocence, it is clear that the State demonstrated a factual basis for the plea. Moreover, Petitioner acknowledged that the State's rendition of the facts was "pretty much how it was." *Id.* at 11. This claim should be **DENIED**.

## Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for writ of habeas corpus filed by Petitioner George A. Collier, [doc. # 1], be **DENIED and DISMISSED**

---

[13] After the prosecutor set forth the factual basis for the plea, the trial judge once again asked Petitioner whether he was pleading guilty because he was in fact guilty, and Petitioner confirmed, "Yes, sir." [doc. # 12, p. 11-12].

[14] Petitioner argues that he proclaimed his innocence when he stated the following to the victim's family: "I didn't kill Eric. I did not kill him. . . . [T]he only reason I took this plea bargain is because of the statements that the other guys made in order for them to get lesser time. I didn't want to subject myself to getting a life sentence. But I'm not guilty of killing your brother . . . ." [doc. # 10-2, p. 86]. This, however, occurred after the trial judge imposed the sentence. Moreover, rather than directing his statements to the judge, Petitioner directed his statements to the victim's family.

**WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this day 21st of July, 2015.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE